UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| HARLAN PRAUL,<br><br>Plaintiff,<br><br>v.<br><br>RON NEAL, et al.,<br><br>Defendants. | CAUSE NO. 3:25-CV-921-AZ |

OPINION AND ORDER

Harlan Praul, a prisoner without a lawyer, is proceeding in this case on three claims: (1) "against Warden Ron Neal, Deputy Warden Dawn Buss, and Safety Hazard Manager Deborah Taylor in their personal capacity for money damages for failing to provide him with clean drinking water from December 2024 to the present in violation of the Eighth Amendment;" (2) "against Dr. Nancy Marthakis, Nurse Practitioner Diane Thews, and Medical Director J. Selke in their personal capacity for money damages for failing to provide him with adequate medical care for a throat problem from December 2024 to the present in violation of the Eighth Amendment;" and (3) "against Warden Ron Neal in his official capacity for permanent injunctive relief related to his need for clean drinking water and adequate medical treatment as required by the Eighth Amendment[.]" ECF 4 at 7. The defendants filed a joint motion for summary judgment, arguing Praul did not exhaust his available administrative remedies before he filed this

lawsuit. ECF 30. Praul filed a response, and the defendants filed a reply. ECF 35, 36. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999); *see also Chambers v. Sood*, 956 F.3d 979, 984-85 (7th Cir. 2020). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The law takes a "strict compliance approach to exhaustion." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019) (citation omitted). To exhaust remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id*. But inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

The defendants provide an affidavit from the Grievance Specialist at Indiana State Prison (ISP) and Praul's grievance records, which show the following facts: During all relevant times, an Offender Grievance Process was in place at ISP which required inmates to complete three steps before filing a lawsuit: (1) the submission of a formal grievance following unsuccessful attempts at informal resolution; (2) a Level I appeal to the warden; and (3) a Level II appeal to the Department Grievance Manager. ECF 30-1 at 2; ECF 30-2 at 3.

Praul's grievance records show he submitted numerous grievances related to his drinking water and medical care that were rejected by the grievance office. First, on July 30, 2025, after Praul submitted an informal grievance which was denied, he submitted a formal grievance complaining his drinking water was unsafe, the dirty water caused his

throat to "close up," and his doctors were denying him medical care. ECF 30-1 at 6; ECF 30-4 at 10. The grievance office rejected and returned this grievance to Praul because (1) it related to more than one event or issue, (2) the issue regarding his drinking water was previously addressed in his informal grievance, (3) the issue regarding the denial of medical care was previously addressed in his request for healthcare, and (4) more information was needed to address his medical issues. ECF 30-4 at 9. On August 18, 2025, Praul submitted two separate grievances as instructed: the first grievance complained of his inadequate drinking water (*Id.* at 17) and the second grievance claimed he was being denied medical care (*Id.* at 14). The grievance office rejected and returned both of these grievances to Praul for numerous reasons, including because the issue was already addressed in his July 30 grievance and they would be considered "duplicative" grievances. *Id.* at 12, 16. On September 20, 2025, Praul submitted another grievance regarding the denial of medical care. *Id.* at 24. The grievance office had not issued any receipt or response for this grievance when Praul filed this lawsuit on October 28, 2025. *See id.*; ECF 1 at 8.

Here, the defendants have not shown that Praul had an available means of completing the grievance process. The grievance office rejected his July 30 grievance in part because his drinking-water complaint had already been addressed in his informal grievance. ECF 30-4 at 9. But the Offender Grievance Process required informal efforts before a formal grievance, and Praul's informal grievance had been denied. ECF 30-1 at 6; ECF 30-2 at 3. His compliance with that preliminary step was not a valid reason to refuse formal review. *See Hill v. Snyder*, 817 F.3d 1037, 1040 (7th Cir. 2016) (holding that

remedies became unavailable when officials refused to process a grievance based on an unannounced requirement).

Praul nevertheless submitted separate grievances on August 18 concerning his drinking water and medical care. The grievance office again rejected them as already addressed, relying in part on the July 30 grievance it had refused to process. ECF 30-4 at 12, 16. Returning that earlier grievance unprocessed did not resolve his complaints. These repeated rejections support a finding that the grievance office prevented Praul from advancing through the grievance process. *See Davis v. Mason*, 881 F.3d 982, 986 (7th Cir. 2018) (vacating summary judgment where repeated rejections and mixed or improper instructions could have prevented an inmate from pursuing the grievance process). Moreover, the rejection notices could reasonably have led Praul to believe he was not permitted to submit grievances about these issues, even though the written policy allowed him to do so. *See Ebmeyer v. Brock*, 11 F.4th 537, 542–43 (7th Cir. 2021) (remedies are considered unavailable when prison staff cause an inmate to believe he cannot file a grievance when, in fact, he can); *Swisher v. Porter County Sheriff's Department*, 769 F.3d 553, 555 (7th Cir. 2014) ("When jail personnel mislead inmates about how to invoke the procedure the inmates can't be blamed for failing to invoke it.").

The other reasons given for returning Praul's grievances do not eliminate this problem. Even assuming the grievance office properly requested separate grievances or additional medical details, correcting those defects or a misspelled name would not overcome its repeated assertion that the subjects had already been addressed. The

notices could reasonably be understood to foreclose further grievances about either complaint, regardless of those corrections. Construing the evidence in Praul's favor, these responses support a finding that the office made the process unavailable both by refusing to process his grievances and by conveying that he could not pursue the complaints further. *See Davis*, 881 F.3d at 986.[1]

Accordingly, the defendants have not met their burden to show Praul had available administrative remedies he had not exhausted when he filed this lawsuit. For these reasons, the defendants' joint motion for summary judgment (ECF 30) is DENIED.

SO ORDERED on this 10th day of November 2026.

s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT

[1] The defendants also argue Praul's grievances could have been rejected as untimely because they were submitted more than ten business days after the issues with his drinking water began. This argument fails for two reasons: first, Praul's grievances complained of ongoing injuries and were therefore timely filed. *See Weiss v. Barribeau*, 853 F.3d 873, 874 (7th Cir. 2017) (determining that an examiner had failed to explain why a grievance was untimely where the grievance complained of an ongoing injury). And second, the grievance office did not reject any of Praul's grievances as untimely, thereby waiving the issue. *See Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005) (holding that "a procedural shortcoming like failing to follow the prison's time deadlines amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming").